```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :    CRIMINAL ACTION
                                :
     v.                         :
                                :
KEVIN HERON                     :    NO. 06-674-01
```

MEMORANDUM

Dalzell, J.                                          May 16, 2007

On April 20, 2007, the two law firms that had entered appearances on behalf of defendant Kevin Heron in this criminal case suddenly sought leave to withdraw, each claiming that the other should represent him. All concerned parties responded to those motions. Last week we held an evidentiary hearing, and then received additional submissions, to establish the facts under which each firm undertook representation of Mr. Heron. Because of the importance of establishing who represents Mr. Heron so that this matter may proceed smoothly to its October trial, we here canvass in some detail this largely unexplored terrain.

**Facts**

In July of 2004, Kevin Heron retained Duane Morris LLP to act as his counsel in a securities matter the Securities and Exchange Commission was investigating. The engagement letter Duane Morris sent Mr. Heron described the scope of its representation of him as "to act as your legal counsel relating to security matters."[1] The engagement letter makes no reference to any particular case or investigation.

---

[1] The engagement letters for both firms were submitted for our <u>in camera</u> review. We reference them in this opinion only as necessary to support our decision.

Duane Morris represented Heron throughout both the SEC investigation itself and protracted plea negotiations after it later became clear that the Government intended to pursue criminal remedies against Mr. Heron. As late as early November of 2006, the Government believed that Heron would plead guilty to an Information. Transcript of May 9, 2007 Hearing ("HT") at 42:15-22. All communications regarding a possible plea agreement were made to counsel at Duane Morris. As Duane Morris's partner on the case, Joseph Aronica, has had a long and distinguished career in the federal criminal justice system,[2] he was ideally suited to help Heron once the matter took on this criminal dimension. Later, on November 3, 2006, plea negotiations broke down and the Government filed a complaint and warrant.

Duane Morris claims that all parties understood that, once charges were filed, it would no longer represent Heron. It does appear that the Government thought that Heron would seek new counsel once it filed criminal charges. Notably, Duane Morris never confirmed this understanding in writing with Heron himself.

On February 16, 2006, Heron entered into an undertaking with Amkor Technologies, his former employer,[3] allowing the company to advance Heron's legal fees. See Del. Code tit. 8, §

---

[2] Mr. Aronica began his professional life in 1973 as a Trial Attorney at the Criminal Division of Main Justice in Washington, and by 1991 earned the Attorney General's Distinguished Service Award. Since 1994 he has focused his skills as a private attorney on criminal and complex civil litigation at three major firms before ending up at Duane Morris's District of Columbia office. See HT at 4:14-7:5.

[3] Heron was Amkor's General Counsel until he left in March of 2005.

145(e) (requiring such an undertaking before a company may advance legal fees for one of its officers or directors). Based on this undertaking, Amkor began paying the legal fees Heron had incurred with Duane Morris.[4]

      Once the arrest warrant was issued, Heron was detained. He made his initial appearance before Judge Strawbridge on November 3, 2006. At that hearing, Mr. Aronica and his Duane Morris associate, Robert Dietrick, purported to enter what they styled "a limited appearance for the purposes of this hearing." Transcript of Hearing before Judge David Strawbridge, Nov. 3, 2006 (docket entry # 26) at 2 ("Initial Appearance"); see also Entry of Appearance (docket entry # 4). Mr. Aronica testified that he and Mr. Dietrick appeared that day for Heron, despite the fact that Duane Morris's representation had, according to Mr. Aronica, terminated. Mr. Aronica explained that he took this facially contradictory step because Heron had no other attorney and needed someone to appear for him. At that hearing, Judge Strawbridge set bail and imposed release conditions.

      On November 30, 2006, the Grand Jury returned an Indictment as to Heron, charging him with insider trading in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 240.10b-5. The Indictment charged that during 2003 and 2004, while Heron was general counsel and chief compliance officer of Amkor, he

---

[4] It does not appear that Amkor has fully paid the outstanding bills for either firm. The company has not, however, flat-footedly refused to pay bills either for fees already billed or those yet to be incurred.

3

repeatedly traded during company-imposed blackout periods, i.e., when employees' trading was forbidden.

On December 3, 2006, four days prior to his arraignment, Heron retained Berkowitz Klein LLP to represent him.[5]  Both Robert Klein of Berkowitz Klein and Mr. Heron himself testified that, as late as the morning of the arraignment, they did not know whether Aronica or Dietrick would appear.  HT at 69:3-16.  When the arraignment convened, only Klein appeared on Heron's behalf.  Heron pled not guilty to all four counts.

After the arraignment, Heron entered into a representation agreement with Berkowitz Klein and paid a modest retainer.  The Grand Jury returned a Superseding Indictment, adding a count for conspiracy to commit securities fraud, on March 8, 2007.

Since the arraignment, little has changed with the representation.  The Government has produced some 550,000 pages of documents, but it appears that review of those documents has not begun in earnest because of the difficulty and expense of getting them transferred from electronic to paper form.  See B.K. Reply at 4 n.3.

From the testimony at last week's hearing, it appears that Amkor has continued to pay the costs of Heron's defense, albeit sometimes only after some prodding.  As noted, on April 20, 2007, both Duane Morris and Berkowitz Klein filed motions to withdraw from this case.

---

[5] That Heron retained Berkowitz Klein suggests that he understood that his relationship with Duane Morris was, at the very least, somehow altered.

**Analysis**

We begin our analysis with the relevant local rule. Loc. R. Crim. P. 44.1 states that "[an] appearance shall constitute a representation to the Court that counsel so appearing shall represent the defendant until final disposition of the case in this Court.  No appearance may be withdrawn without leave of Court."

Two things are notable on the face of this rule. First, the rule makes no provision for a limited appearance of the sort Duane Morris purported to make on November 3, 2006. Second, withdrawal requires leave of the Court, no matter the circumstances.  The rule also makes <u>no</u> provision for withdrawal as a matter of right.  In determining whether to grant such leave, our primary concern must be to ensure that the defendant's interests are not adversely affected by any withdrawal.  Heron is, after all, entitled to competent assistance from the attorney of his choosing.  <u>See, e.g.</u>, <u>United States v. Laura</u>, 607 F.2d 52, 55 (3d Cir. 1979) ("[T]he sixth amendment generally protects a defendant's decision to select a particular attorney to aid him in his efforts. . . .").

Duane Morris argues that, because it made only a limited appearance and has since been uninvolved in Heron's ongoing defense, we should allow it to withdraw.  Indeed, Duane Morris contends that the delay in filing its motion to withdraw was caused only by its assumption that it was not listed on the docket and that, as soon as it became aware of this error, it promptly moved to withdraw.  HT at 31:23-32:10.  This is

difficult to believe.  The Electronic Case Filing docket confirms that notice of each of the twenty-seven docket entries that were filed between Duane Morris's appearance and its motion to withdraw was sent[6] to both Mr. Aronica and Mr. Dietrick as attorneys of record.  Relying on the ECF record, we conclude that Aronica and Dietrick had continuous and legally sufficient notice that the Court still regarded them as participating in this case.

We have already noted that Duane Morris's purported limited appearance finds no basis in the local rules.  The only evidence that Duane Morris offers in support of its contention that its purported "limited" entry was effective is that Judge Strawbridge, upon being told that the entry was for a limited purpose, responded "Okay."  Initial Appearance at 2.  There is no colorable argument that this one word amounted to Judge Strawbridge's legal determination that, under the circumstances of this case, the normal operation of the local rules should be suspended.  To the contrary, there was no focused consideration on the extraordinary position Duane Morris now stakes out.  Indeed, even taking "Okay" as some kind of ruling,[7] it is by no means clear that Judge Strawbridge had the authority to grant such a request even had he done so unequivocally after reasoned consideration of this important issue.

---

[6] Because neither Aronica nor Dietrick was a participant in our ECF system, this notification would have been made by mail rather than electronically.

[7] We note that Judge Strawbridge said "Okay" eleven times in a hearing that lasted only four minutes.  That locution was his response to nearly every statement Mr. Dietrick made.

But even if Duane Morris believed in good faith that Judge Strawbridge's "Okay" constituted some kind of absolution, the firm still bore a significant burden to see to it that it was, in practical and ethical effect, out of this Court's orbit in Mr. Heron's case.  This it palpably did not do, as its continued presence on the docket shows.

Duane Morris further claims that, since it has been out of the loop for the past six months, it is ill-equipped to aid in Heron's defense.  Were trial in this case only a few weeks away, such an argument might carry some weight.  As it stands, however, trial is still five months away and it appears that the defense has made little progress in reviewing documents and preparing trial strategy.  It would not be unreasonable to believe that, due to Duane Morris's extensive involvement in the SEC investigation and the plea negotiations, it is <u>better</u> informed about the details of this case than Berkowitz Klein, which has not yet had the opportunity to review the significant discovery the Government provided, much of which was undoubtedly shared with Duane Morris during the SEC investigation.  In any case, Duane Morris is far better situated -- purely on the basis of its size -- to undertake a document review of the sort that will be required to prepare this case for trial than is Berkowitz Klein.

Duane Morris's final justification for its desire to get out of this case is that "[t]he Government was aware we would not continue representing Mr. Heron.  Mr. Heron knew that."  HT at 35:21-23.  While it appears the Government understood Duane Morris's intention to end its representation, it is much less

clear that Mr. Heron shared that understanding.  If Duane Morris intended to limit its representation to only certain aspects of Heron's case, it should have made that clear in writing, preferably in the engagement letter.  See Lawrence J. Fox & Susan R. Martyn, Red Flags:  A Lawyer's Handbook on Legal Ethics 77 (2005) ("The more complex the legal matter, the greater the need for explicit informed consent from your client to limit your representation.  A good engagement letter provides you with an opportunity to clarify which legal services you do and do not intend to provide.  Be sure to specify alternatives that you will not pursue to make it clear that a client should seek those services elsewhere.") (cross-reference omitted).  If Duane Morris determined after the engagement had begun that it needed to limit the scope of its representation, it should at least have notified Heron in writing.  This it plainly did not do.  To the contrary, the scope of the engagement remained at all times "to act as your legal counsel relating to security matters," and by October and November of 2006 those services had expanded to include plea negotiations, which Mr. Aronica was eminently qualified to conduct for Heron.

The Pennsylvania Rules of Professional Conduct, applicable to all lawyers practicing before this Court, see Loc. R. Civ. P. 83.6, rule IV(B) made applicable in criminal cases by Loc. R. Crim. P. 1.2, require that, when representation is terminated, "a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client [and] allowing time for

employment of other counsel."  Pa. R. Prof. Conduct 1.16(d).[8]  Though it appears that Duane Morris may have taken some steps to help Heron secure substitute counsel <u>after</u> the initial appearance, we have seen no evidence that it took any earlier steps to ensure that his interests were adequately protected upon termination of the relationship.  Given that the Government had announced its intention to file a complaint and warrant on the day Heron's response to the proffer was due, Duane Morris had an ethical duty to protect Heron's interest by helping him enlist substitute counsel if it did not intend to continue to represent him once charges were filed.  Even had Heron been fully aware that Duane Morris intended to cease representing him -- and the record is undisputed that he did <u>not</u> so understand, see HT at 69:14-18 (twice affirming that "I was not sure about [the] Duane Morris firm") -- the firm had an ethical obligation to take reasonable steps to protect his interests.

In short, we are unwilling to base our decision on Aronica's self-serving testimony that "Mr. Heron knew", HT at 35:23, that Duane Morris's representation would terminate, given the absence of any documentation supporting that contention and Heron's testimony that he was unsure whether Duane Morris would be representing him at the arraignment.  HT at 69:10-16.

---

[8] Our view does not depend on any idiosyncracy of Pennsylvania's ethical rules.  The Pennsylvania rule is identical to Model Rule of Professional Conduct 1.16(d).  The relevant rule in the District of Columbia reads, "In connection with any termination of representation, a lawyer shall take timely steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client [and] allowing time for employment of other counsel. . . ."  D.C.R. Prof. Conduct 1.16(d).

9

Berkowitz Klein also seeks to withdraw, not on the Duane Morris theory that they were never truly representing Heron in this case, but out of a concern that the Government's notice of forfeiture represents a "sword of Damocles" hanging over their representation that will likely result in their not being paid for their services. B.K. Mot. at 1. This argument fails for several reasons.

First, and most simply, "non-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation." United States v. Parker, 439 F.3d 81, 104 (2d Cir. 2006) (internal citation omitted). That is especially true here, where Berkowitz Klein was aware of the Government's notice of forfeiture when it agreed to represent Mr. Heron.[9] By the time Heron approached Berkowitz Klein about possible representation, the Indictment containing the notice of forfeiture had already been filed. See HT 66:22-23 (identifying December 3, 2007 as the date Heron first approached Berkowitz Klein).

Second, although Amkor has not yet paid in full, the company has been paying Heron's legal bills. In its February 27, 2007 10-K filing, Amkor affirmed that it had indemnified its

---

[9] Berkowitz Klein argues that, until our earlier opinion in this case, see United States v. Heron, 2007 WL 1152656 (E.D. Pa. Apr. 17, 2007), the Government's right to forfeiture was unclear. We do not think the alterations to the wording of 28 U.S.C. § 2461 were so substantial as to preclude Berkowitz Klein from making a rational decision regarding whether it ran a significant risk of forfeiture of their fees or of the assets Heron might use to pay them. Though the firm might have foreseen its argument that the notice of forfeiture was improper, it was certainly on notice that there was a reasonable possibility that Heron's assets would be subject to forfeiture.

10

officers and directors, "to the fullest extent permitted by law, against related expenses, judgments, fines and any amounts paid in settlement."  Amkor Technologies, Inc., Feb. 27, 2007 Form 10-K at 100.  Because Heron is presumed innocent at this stage, and has delivered the undertaking Delaware law requires, Amkor must indemnify Heron at the very least until such time as he is convicted or enters a guilty plea.  See  Del. Code tit. 8, § 145(a) (allowing indemnification of officers and directors).[10]

Third and finally, Berkowitz Klein does not seek to withdraw on the basis that they have not been paid, but rather because they fear that they will not be paid in the future.  We are aware of no precedent for such an extraordinary notion and Berkowitz Klein provides none.  It is most assuredly not the job of this Court to protect Berkowitz Klein from its free decision to accept representation of a client whose financial situation happens to be under a cloud.

Under the circumstances, it is clear that allowing either of these law firms to withdraw at this point would likely result in prejudice to Heron's defense[11] and would certainly

---

[10] Obviously, we are not in a position here to determine conclusively the existence of a duty to indemnify on the part of Amkor.  Nevertheless, neither of the law firms seeking to withdraw has presented us with any reason to believe that, were they to attempt to enforce such a obligation, Amkor would ignore its legal duties or the Delaware courts would not enforce them.

[11] It is hard to overstate this prejudice to Heron and to the Court.  If we allowed withdrawal, Heron fears he would have to represent himself.  See HT at 22:6-19.  This fear strikes us as not fanciful.  If we allowed withdrawal because of the supposed clouds, it would surely constitute -- to borrow Fox and Martyn's vivid locution -- a very Red Flag to any other lawyer
(continued...)

result in significant delay.  Because we find that neither firm has shown good cause for withdrawal, and because, without such a showing, withdrawal would only be proper if it "can be accomplished without material adverse effect on the interests of the client," Pa. R. Prof. Conduct 1.16(b)(1), we will deny both firms' motions.[12]

---

[11](...continued)
Heron might try to retain.  And, as no one disputed at the hearing, given Heron's resources and Amkor's duties under its by-laws and Delaware law, we could not conceivably make the predicate finding of indigency to warrant appointment of a lawyer from our Criminal Justice Act panel.

[12] There are, obviously, unanswered questions about the proper division of labor in preparing and presenting Heron's defense.  Given that such seasoned counsel are involved, we trust that the firms will be able to resolve these issues between themselves consistent with their ethical obligations to their shared client.

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :     CRIMINAL ACTION
                                :
         v.                     :
                                :
KEVIN HERON                     :     NO. 06-674-01
```

ORDER

AND NOW, this 16th day of May, 2007, upon consideration of Duane Morris's amended motion to withdraw (docket entry # 37), Berkowitz Klein's motion to withdraw (docket entry # 33), Berkowitz Klein's response and reply (docket entries 34 and 40) and the Government's response (docket entry # 38) and for the reasons articulated in the accompanying Memorandum of Law, it is hereby ORDERED that:

        1.    Duane Morris's motion to withdraw is DENIED; and

        2.    Berkowitz Klein's motion to withdraw is DENIED.

BY THE COURT:

_____
Stewart Dalzell, J.