

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : CRIMINAL ACTION

v.

KEVIN HERON : NO. 06-674

FILED OCT 05 2007

MEMORANDUM

Dalzell, J. October 5, 2007

Defendant Kevin Heron is the former General Counsel of Amkor Technology. He is charged with one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 and three counts of securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5.

The Government seeks to have us reconsider our Order of September 26, 2007 ("September 26 Order") excluding evidence of Amkor's trading blackout periods from its case-in-chief against Heron. Because this case raises important issues about the proper standard for materiality in a criminal securities fraud case, we will address the Government's motion at length.

**Facts**

Besides being its former General Counsel, Kevin Heron also bore the title of Chief Compliance Officer for Amkor Technologies. The Government's second superseding indictment charges that, during three separate periods while he held those positions, Heron traded in Amkor securities while he was in

possession of material, non-public information about the company.[1]

Specifically, the Government charges that:

(1) Between October 15, 2003 and October 17, 2003, while Heron knew that Amkor would likely be releasing positive quarterly earnings on October 27, 2003, he purchased about 4,000 shares of Amkor stock;

(2) Between April 1, 2004 and April 26, 2004, while Heron knew that Amkor would likely be releasing negative quarterly earnings on April 27, 2004, he sold about 17,000 shares of Amkor stock and traded about 140 Amkor option contracts; and

(3) Between May 20, 2004 and July 28, 2004, while Heron knew that Amkor's financial performance was poor and that Amkor was involved in negotiations with Unitive, Inc. for a joint business transaction that the investment community might not applaud, he sold about 22,100 shares of Amkor stock and traded some 100 Amkor option contracts.

[1] Heron is also charged with conspiracy to commit securities fraud. Because the conspiracy count is largely unaffected by the issues at play in this motion, we do not discuss the details of that charge.

During each of these periods, it is undisputed that Heron and other employees at Amkor were subject to a company-imposed trading blackout. Such blackout periods were imposed by company policy at the close of each financial quarter out of concern that the affected employees would often be in possession of material information about the quarterly earnings before that information was announced to the public. In addition, the company sometimes imposed blackouts when it believed that material, non-public information was widely known among the affected employees. As Chief Compliance Officer, Heron was responsible for instituting these blackout periods.[2]

According to the indictment, each of the charged transactions took place during a company-imposed blackout period.

**Heron's Motion**

One of Heron's pretrial motions[3] sought to strike from the indictment any reference to the company-imposed blackout periods and to exclude evidence of those blackout periods from

---

[2] Based on the evidence before us at this stage, it is not entirely clear whether Heron was responsible for deciding when to impose the blackouts or was only responsible for communicating to the affected employees that a blackout had been imposed.

[3] The relevant motion is docket entry # 72 in this case.

the Government's case-in-chief. In his motion, Heron argued that because such blackout periods were prophylactic in nature, they were not probative of the question of whether Heron possessed material, non-public information when he traded Amkor securities. In the alternative, Heron argued that even if evidence of the blackout periods were relevant, there was a substantial danger of unfair prejudice because the jury might believe that a violation of a company-imposed blackout period was tantamount to criminal insider trading.

**The September 26 Order**

On September 26, 2007, we issued an Order addressing several pretrial motions in this case, including Heron's motion to exclude evidence of the blackout periods. That Order granted Heron's motion. Because the Government now asks us to reconsider that ruling, we will examine the Order in detail before proceeding.

We first noted that Amkor had instituted its policy barring trading in the period before Amkor's earnings announcements "due to the fact that, during this period, executive officers, directors and certain other employees often possess Material Nonpublic Information." September 26 Order ¶ (g) (quoting Amkor insider trading policy). Based on that

observation, we found that "evidence that Kevin Heron's trades occurred during a blackout period is relevant because the existence of the trading blackout is based on Amkor's considered judgment that covered employees are more likely to possess material, non-public information during those periods tha[n] at other times."[4] Id. ¶ (j).

Having concluded that the evidence was relevant under Fed. R. Evid. 401, we then went on to weigh its probative value against the likelihood that the evidence would unfairly prejudice Heron. See Fed. R. Evid. 403. We noted that where, as here, the issue is whether a particular employee "actually possessed material, non-public information," the probative value of a prophylactic[5] blackout period is quite small. Id. ¶ (l)-(m). In

---

[4] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

[5] The Government has not argued that blackouts at Amkor were ever imposed based on an actual determination that the affected employees had material, non-public information. Rather, it appears that Amkor maintained a list of employees who were subject to blackouts and, whenever a blackout was imposed, it was applied to all employees on the list regardless of whether each of them had actual knowledge of particular material, non-public information. This is in contrast to the situation in United States v. Bhagat, 436 F.3d 1140 (9th Cir. 2006), a case the Government cites frequently, where the blackout was imposed only on those employees who had actually received an e-mail containing the material, non-public information that the company had been (continued...)

assessing the risk of unfair prejudice from this evidence, we noted that introduction of evidence regarding the blackout periods "necessarily involves telling the jury that Heron violated a company policy and traded when he should not have." Id. ¶ (o). Because "[i]nforming the jury of bad acts that are not themselves the charged conduct is the very essence of unfairly prejudicial information in a case such as this one," id. ¶ (q), we concluded that there was a great risk of unfair prejudice if we allowed the Government to present evidence that Heron's trades took place during a blackout period.

We next considered the Government's argument that evidence of the blackout periods might be admissible not only to show materiality, but also to show scienter. We concluded that "[t]o the extent that the Government seeks to demonstrate scienter through use of Amkor's insider trading policy, it can accomplish that in a far less prejudicial fashion by showing that Heron was an attorney and was responsible for creating and maintaining that insider trading policy." Id. ¶ (u).

On balance, we concluded, the risk of unfair prejudice from evidence of blackout periods greatly outweighed its

[5](...continued)
selected to build the Xbox for Microsoft.

probative value. On that basis, we granted Heron's motion to exclude the evidence.

**The Government's Motion**

The Government now asks us to reconsider that decision. The Government's motion is based on its contention that we made a clear error of fact when we found that "[t]he blackout periods at issue were mechanistic and were applied without any consideration as to whether the employees affected actually had material, non-public information during the period in question." Id. ¶ (h). Because two of the blackout periods at issue were not mechanistically imposed based on Amkor's end-of-quarter rules but instead because of specific material, non-public information -- so the Government's argument goes -- that finding is clearly erroneous and warrants reconsideration of our Order.

**Standard of Review**

A motion for reconsideration is properly granted only if the movant demonstrates at least one of: (1) a change in controlling law; (2) the availability of new evidence; or (3) a clear error of fact or law that will result in a manifest injustice. Max's Seafood Café v. Quineros, 176 F.3d 669, 677 (3d. Cir. 1999). The Government raises no claim of a change in the controlling law or discovery of new evidence, so the only

question before us is whether our September 26 Order contained a clear error of fact that will result in a manifest injustice if not corrected.

The Government attached a significant number of exhibits to its motion for reconsideration and now contends that we should have held a hearing to consider that evidence before passing on Heron's motion. In order for us to have made a clear error of fact, however, we must have done so based only on the facts and arguments that were actually before us when we ruled on the original motion. The Government does not claim that any new evidence has surfaced since September 26. We thus may grant the Government's motion only if its original response to Heron's motions in limine raised sufficient questions of material fact related to the blackout periods to make clearly erroneous our failure to hold a hearing to consider documentary evidence.

The Government's response to Heron's motion did, in fact, mention the existence of blackout periods whose timing was not mechanistically determined. See Gov't Resp. at 2 ("In addition [to the quarterly blackout periods], defendant would instate blackout periods during such times as material, non-public information was widely known within the company.") The Government's response also noted two such periods that are potentially relevant to the crimes Heron is charged with. The

first, which extended from May 10 to 18, 2004, was imposed based on information that was shared with certain executives and board members regarding "Project Iris," a transaction with IBM. The second, which began on May 24, 2004, was based on information about the pending transaction with Unitive.

**Analysis**

The Government contends that our finding that the blackout periods were "mechanistic" was both "central" to our ruling and clearly erroneous. Their claim is overstated on both counts.

First, although the timing of the Project Iris and Unitive blackout periods was not based on Amkor's end-of-quarter rules, the list of people those blackouts covered was mechanistically determined by the standing policy. Thus, as with the end-of-quarter blackouts, the imposition of the blackout on a particular employee was not based on any determination that the employee was actually in possession of material, non-public information, but only that there was an increased risk that high-level employees would possess such information. Rather, the blackout was imposed on all employees who were subject to trading blackouts. Thus, all the blackout periods at issue in this case "were applied without any consideration as to whether the

employees affected actually had material, non-public information during the period in question." September 26 Order ¶ (h). The only factual question the Government raises, then, is whether the use of the word "mechanistic" was based on a clear error of fact.

Second, our finding that the blackout periods were mechanistic in nature was not the crux of our holding in the September 26 Order, as the Government claims. Rather, our decision to exclude evidence of the blackout periods was based on a finding that the probative value of such evidence was outweighed by the risk of unfair prejudice. See September 26 Order, ¶¶ (k)-(q). While our finding that those blackout periods were mechanistically applied was a factor in that determination, it was by no means dispositive, as the Government seems to imply.

In examining this issue, it is significant that the Government's response to Heron's motion provided us with no basis to find that the May 10 and May 24, 2004 blackout periods were more probative of Heron's possession of material, non-public information than the end-of-quarter blackout periods. Instead, the Government's argument as to all blackout periods was that "it is difficult to imagine evidence more relevant to the issue of whether defendant traded while in possession of material, non-public information or defendant's intent, particularly where, as here, the defendant was in charge of enforcing the insider

trading policy for the company." Gov't Resp. at 4.[6] Our rejection of that argument was primarily based not on the mechanistic timing of the blackout periods but on the lack of a determination that the blacked out employees actually possessed material, non-public information and the limited value of those blackouts in proving, as the Government must, that Heron himself actually possessed such information.

Contrary to the Government's contention, the blackout period itself is not the most probative information that Heron possessed material, non-public information. Exhibit 3 to the Government's motion to reconsider provides a perfect example. That exhibit is an e-mail in which Heron sent out an update on "Project Iris" and established a blackout period. The update

---

[6] The Government does claim -- albeit without explanation -- that "[t]he relevance is even greater [in the non-end-of-quarter blackouts] because the defendant was responsible for instating non-scheduled blackout periods due to unannounced corporate developments and was simultaneously trading consistent with that inside information." Gov't Resp. at 5. Notably absent from the Government's argument in its original response is any contention that Heron was responsible for evaluating information that was known to employees and determining whether it was sufficiently material and/or non-public to warrant the imposition of a blackout period. Such an argument would have significantly altered our calculus since Heron would have necessarily possessed the information to make such a determination, but the Government did not make it in response to Heron's motion. In any case, because the September 26 Order only excludes evidence of the blackout periods themselves, evidence that Heron was asked for such advice is not directly covered by our Order and could still be admissible.

itself, which Heron received from Executive Vice-President of Corporate Development Oleg Khayakin, details precisely the information Heron possessed. It is for the jury to determine whether that information was material and non-public within the meaning of the securities laws. Evidence that Heron subsequently imposed a blackout period does not aid the jury in that determination.[7]

Because the Government made no argument that we should analyze the Project Iris and Unitive blackouts differently than the end-of-quarter blackouts, it cannot now cry foul because we painted them all with the same "mechanistic" brush. We find that the Government's initial response to Heron's motion contained no argument or averment that required us to hold an evidentiary hearing to resolve disputed questions of fact. Having failed to make such factual averments in its response, the Government cannot now introduce evidence to support them in its motion for reconsideration.

The issue on reconsideration is whether we made a clearly erroneous factual finding based on the information that was before us when we decided the motion, not whether, given the additional arguments the Government now sees fit to make in its

---

[7] This is true whether or not Heron was responsible for the decision to impose the blackout.

esprit de l'escalier, we would now decide the motion differently. We need not, therefore, examine the Government's new arguments or factual averments in any great detail. We note, however, that in its attempt to underscore the injustice of our September 26 ruling, the Government demonstrates both its failure to understand the ruling and an apparent misapprehension as to what a jury must find to convict Heron. The Government claims that our ruling will prevent it from demonstrating that Heron:

> (1) helped create the company's insider trading policy and was responsible for its enforcement in order to establish defendant's sophistication on such issues and to undercut any defense that his trading was an innocent mistake; (2) the policy provided for blackout periods where employees who had access to material, non-public information could not trade in order to establish that defendant's repeated, surreptitious trading during such periods is strong evidence of his intent to deceive and commit insider trading; (3) defendant personally instated two blackout periods in order to establish that defendant actually possessed non-public information about the IBM and Unitive transactions and that he appreciated the significance of this information by virtue of the fact that he ordered the blackouts; and (4) defendant sought to trade during blackout periods because that when he could most effectively exploit his inside information for financial gain and that because he was the compliance officer, he did not have to fear anyone policing his trading. Gov't Reply at 6.

First, nothing about our ruling in any way prevents the Government from attempting to introduce evidence that Heron was

responsible for Amkor's insider trading policy to demonstrate scienter. Indeed, we specifically noted in our September 26 Order that this was far more probative of his scienter than any trading blackout would be. See September 26 Order ¶ (u). Second, as we have noted repeatedly, the fact that Heron sent the e-mail that notified employees of the blackout period does not demonstrate that he in fact possessed the material information that warranted the blackout. In order to meet its burden of proof beyond a reasonable doubt, the Government must demonstrate far more than that Heron knew that some potentially[8] material, non-public information was in the possession of some employees; it must show that Heron actually had the information himself. If it has evidence of that -- as it clearly does in the case of the Project Iris blackout, for example -- evidence of the blackout period is simply duplicative. Finally, Heron's ability to "exploit his inside information for financial gain," if indeed that is what he did, is in no way dependent on a blackout period. Amkor is a publicly traded company with average daily trading

[8] As we noted above, the determination of whether the information on which Heron allegedly traded is material and/or non-public belongs to the jury. Any determination Heron may or may not have separately made as to its materiality is irrelevant to the issue in this case. A corporate officer such as Heron has every incentive to interpret materiality far more broadly than would a criminal jury since he has a duty to protect the company from potential civil liability.

volume of more than three million shares. See, e.g., Yahoo! Finance, http://finance.yahoo.com/q?s=AMKR. It is not as though, as the Government's statement seems to imply, Heron needed to impose the blackouts in order to make sure that he would be able to trade a few thousand shares in peace.

Because the Government has failed to demonstrate a clear error of fact that will result in manifest injustice, we must deny its motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : CRIMINAL ACTION

v. :

KEVIN HERON : NO. 06-674-01

FILED
OCT 05 2007
MICHAEL E. KUNZ, Clerk
By ______ Dep. Clerk

ORDER

AND NOW, this 5th day of October, 2007, upon consideration of the Government's motion for reconsideration (docket entry # 90), Heron's response (docket entry # 94), and the Government's reply (docket entry # 95) and for the reasons articulated in the accompanying Memorandum of Law, it is hereby ORDERED that the Government's motion is DENIED.

BY THE COURT:

Stewart Dalzell, J.

10-5-07 Faxed To:
D. Cohen / S. Fields
R. Klein / G. Berkowitz
J. Alonica / R. Dietrick